UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 08-10063-RWZ

UNITED STATES OF AMERICA

v.

JOHNNY PIRES

ORDER ON MOTION TO SUPPRESS

April 10, 2009

ZOBEL, D.J.

Defendant, Johnny Pires ("Pires"), stands indicted on two counts of attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (b)(1) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B). (Docket # 1.)  He has moved to suppress statements he made to law enforcement officers during the execution of a search warrant on April 10, 2007.  (Docket # 22.) Based on the parties' motion papers and after an evidentiary hearing, I find the following facts and deny defendant's motion to suppress.

I.    **Findings of Fact**

In his Post-Hearing Supplemental Memorandum in Further Support of Defendant's Motion to Suppress (Docket # 36), Pires describes the facts established by the hearing testimony and other evidence:[1]

In April of 2007, Johnny Pires was twenty-two years old. He worked

---

[1] Footnotes, citations to the record and citations to exhibits omitted.

as a Certified Nurse's Aide.  He had never been arrested and had no criminal record.

Pires lived in a single-family home at 26 Forest Street in Middleboro. FBI Special Agent Sarah De Lair received a lead that someone with an IP address that was associated with his street address was accessing child pornography using LimeWire, a filesharing program.

Around 6 A.M. on April 10, 2007, a dozen federal, state, and local agents descended on Pires' house to execute a search warrant issued based on the information acquired by De Lair. There were seven federal agents with jackets or vests that prominently said "FBI" on them, two state troopers in uniform, and three Middleboro police officers.  All dozen agents and officers were armed, with the five state and local officers' weapons fully visible.

The warrant was executed at such an early hour so that the target of the investigation would likely be home and, thus, available for interrogation. The plan worked. Johnny Pires came to the door in his pajamas, having obviously been awakened by the hard knocking on the door.  When he opened the door, two FBI agents were there, and multiple police vehicles were visible.  Agent De Lair said, "I'm with the FBI. We have a search warrant." Pires said nothing.

Once the two agents and Pires went inside, the other law enforcement officers also entered and fanned out for a protective sweep.  Agents De Lair and Bryan Zinn directed Pires to a table in the dining room.  De Lair said, "We have a federal search warrant for child pornography."  She told him that agents were searching the house for child pornography.

Agent De Lair placed an "Advice of Rights" form in front of Pires.  At 6:16 A.M., she said, "I'm going to read you this.  This is your Advice of Rights.  Read through it."  Pires appeared to read the form, and said he understood it.  At 6:18 A.M., Pires signed the waiver portion of the form, which read, "I read the statement of my rights and I understand what my rights are.  At this time I'm willing to answer questions without a lawyer present."

Agent De Lair testified that the agents did not overtly threaten Pires, lie to him, or mislead him.  Although she could have recorded this interaction, she has never recorded any interrogation conducted in connection with the execution of a search warrant.

The agents told Pires he was not under arrest.  They did not, however, tell him he was free to leave.

The agents posed a series of incriminating questions.  Pires responded to all of the agents['] questions.  At the conclusion of questioning, the law enforcement officers left after they completed their search of the residence.

(Docket # 36, 1-3.)

Defendant's rendition of the facts accurately summarizes the events of April 10, 2007.  In addition to the facts stated above, I find that: (1) Agent De Lair read the contents of the Advice of Rights form aloud in an unhurried and normal tone to Pires before asking him if he understood his rights; (2) Pires spoke English and appeared to understand De Lair's questions and other statements made to him; (3) De Lair did not notice any impairment in Pires' actions or responses to her questions; (4) in Massachusetts, a Certified Nurse's Aide must pass a written and oral exam and a demonstration of skills; and (5) Pires was taking college courses on early childhood education.[2]

Prior to the hearing, Pires filed an affidavit in which he stated that when Agent De Lair opened the folder containing the Advice of Rights form, he saw "prominently displayed," a document that said "Arrest Warrant" across the top.  (Docket 22, Ex. A ¶¶ 8, 9.)  In addition, he suggested that the agents began their interrogation before they presented him with the Advice of Rights form.  (See id. ¶¶ 11, 12.)  Finally, he stated

---

[2] I do not find the number of law enforcement officers involved in the execution of the search warrant unreasonable given the lack of information as to the number of people at the residence and the obligation on the part of the F.B.I. to include state and local police in the search.

that "[neither] agent read the form to me or inquired whether I understood it."  (Id. ¶ 12.)

I credit the testimony of the F.B.I. agents and conclude that Pires is mistaken on all

points.  Agent De Lair did not have an arrest warrant among the papers she brought

with her that day and she did not begin the questioning until after Pires read and

signed the Advice of Rights form.   In addition, she not only read the form aloud to him,

she asked him to read it to himself and did not have him sign the form until after he

acknowledged that he understood it.

After signing the Advice of Rights form, Pires admitted to the agents they would

find child pornography on his computer, described using the search terms "Lolita" and

"young preteen" to find files in LimeWire, stated that he would usually download five to

six files, two to three times per week and responded that he was interested in children

seven to ten years old.  Pires now moves to suppress these statements on the ground

that he did not waive his rights "knowingly and intelligently, and voluntarily."  (Docket #

36, 5 (paraphrasing United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir.

2004)).)

## II.    Legal Standard

Before any interrogation, a suspect in custody must be clearly informed of his

right to remain silent and to have a lawyer present, and he must be informed that

anything he does say can be used as evidence against him.  Miranda v. Arizona, 384

U.S. 436, 471 (1966).[3]  Further, a waiver of these rights is only valid if it is made

_____

[3] Defendant argues that he was in custody at the time of the interrogation and
thus subject to the requirements of Miranda.  Because the F.B.I.'s interrogation of Pires
was lawful, even if he was in custody, I need not decide the issue.

"voluntarily, knowingly and intelligently."  Moran v. Burbine, 475 U.S. 412, 421 (1986)

(quoting Miranda, 384 U.S. at 444).  This requires, first, that "the relinquishment of the

right must have been voluntary in the sense that it was the product of a free and

deliberate choice rather than intimidation, coercion, or deception."  Id.  "Second, the

waiver must have been made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it."  Id.

## III.   Discussion

Here, Pires was apprised of his Miranda rights and he waived them before he

was questioned by De Lair.  Therefore, the only question is -- was that waiver made

voluntarily and knowingly?

There is no allegation that Agents De Lair and Zinn used coercion or deception

to obtain the waiver from Pires.  Rather, Pires argues that he was intimidated by the

number of law enforcement, their holstered sidearms, and the early hour which "created

the impression that Pires would be hauled away immediately unless he answered their

questions."  (Docket # 22, 4.)  While there is no doubt that the large number of police

and F.B.I. agents combing the house at 6 a.m. was intimidating, De Lair told Pires that

he was not under arrest and that he had a right to remain silent and a right to a lawyer.

She explained the protective sweep to Pires and that the officers were there to search

for child pornography as authorized by the search warrant.  That police have handguns

visible on their persons is not unusual and there is no suggestion that any officer

unholstered his or her weapon during the search or otherwise threatened Pires.  In

addition, defendant's argument that he feared immediate arrest relies heavily on his

5

contention that he saw a blank arrest warrant among Agent De Lair's papers (<u>see</u>

Docket # 22, Ex. A ¶¶ 8-10), which, as discussed <u>supra</u> Part I, was not there.  Finally,

the voluntariness inquiry in cases where a defendant has received a proper <u>Miranda</u>

warning is very narrow; "only confessions procured by <u>coercive official tactics</u> should

be excluded as involuntary."  <u>United States v. Byram</u>, 145 F.3d 405, 407 (1st Cir. 1998)

(emphasis in original) (citing <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986)); <u>see</u> <u>also</u>

<u>United States v. Santos</u>, 131 F.3d 16, 19 (1st Cir. 1997) (noting that "some degree of

coercion or trickery by government agents [is required] to render a statement

involuntary").  Therefore, I hold that the intimidation inherent in executing the search

warrant on April 10, 2007, was insufficient to conclude that Pires' action in signing the

Advice of Rights form was other than voluntary.

Even if he signed the form voluntarily, Pires argues that because of the early

hour and the presence of a large number of law enforcement officers searching the

house, his mental condition was such that he did not understand the rights he was

relinquishing.  While this is a subjective determination, the inquiry is to be judged on

the "totality of the circumstances surrounding the interrogation."  <u>Burbine</u>, 475 U.S. at

421 (quotation marks and citation omitted).

The only evidence to support Pires' contention that he did not understand his

rights is his own affidavit.  Against this is the evidence that De Lair read the Advice of

Rights form to him aloud and then asked him to read the form to himself before asking

him if he understood his rights, to which he answered "yes" and signed the form.

Indeed, the F.B.I. conducted the waiver of rights and interrogation in strict accordance

with the requirements of <u>Miranda</u> and its progeny.

In addition, not only does Pires speak English, his licensure as a Certified Nurse's Aide in Massachusetts and his educational pursuits at the time bespeak a level of intelligence and command of English more than adequate to understand the rights he was waiving.  Finally, I credit De Lair's testimony that Pires did not appear impaired or confused.  Considering the totality of the circumstances surrounding the interrogation, I find that Pires understood his rights and knowingly waived them prior to questioning by Agent De Lair.

## IV.    Conclusion

Accordingly, defendant's motion to suppress (Docket # 22) is DENIED.


    April 10, 2009                          /s/Rya W. Zobel
            DATE                               RYA W. ZOBEL
                                  UNITED STATES DISTRICT JUDGE